UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEC FINANCIAL SERVICES, LLC | Case No.: 2:24-cv-5983 |
| Plaintiff, | **CIVIL ACTION** |
| - against - | **COMPLAINT** |
| THE SKINCARE STUDIO LLC and TERRI A. GRIER a/k/a TERRI ALECIW GRIER a/k/a TERRI GRIER a/k/a TERRI HILLER a/k/a TERRI A. HILLER a/k/a TERRI MILLER, individually | |
| Defendants. | |

NOW COMES NEC Financial Services, LLC (hereinafter referred to as "NECFS" and the "Plaintiff"), MMP Capital LLC's assignee, through its undersigned counsel, Romano, Garubo & Argentieri Counselors at Law, LLC, for its Complaint against Defendants, The Skincare Studio LLC ("The Skincare Studio") and Terri A. Grier a/k/a Terri Aleciw Grier a/k/a Terri Grier a/k/a Terri Hiller a/k/a Terri A. Hiller a/k/a Terri Miller, individually ("Terri Grier"), respectfully shows:

## NATURE OF THE ACTION

1. NECFS seeks a judgment and order declaring the Defendant, The Skincare Studio, in default under an Equipment Finance Agreement (the "Finance Agreement") for failure to pay the amounts due under the Finance Agreement. A true and complete copy of the Finance Agreement is annexed hereto and made a part hereof as Exhibit "A".

2. Additionally, NECFS seeks a judgment and order declaring the Defendant, Terri Grier, is in default under the personal guaranty agreement signed and given by Defendant, Terri Grier, to NECFS under which she personally guaranteed The Skincare Studio's payment and performance obligations due under the Finance Agreement.

3. This Complaint seeks judgment against Defendants, The Skincare Studio and

Terri Grier, for the damages caused to by their respective loan and guaranty agreement defaults, plus costs and attorney fees.

## THE PARTIES

4. NECFS is, and at all times hereinafter mentioned was, a Delaware limited liability company, with its principal place of business located at 250 Pehle Avenue, Suite 203, Saddle Brook, New Jersey, owned by its member NEC Capital Solutions of America Inc formed under the laws of the State of Delaware and having its principal place of business in the State of New Jersey.  NEC Capital Solutions of America Inc. is a wholly owned subsidiary of NEC Capital Solutions LTD, a publicly traded Japanese corporation.

5. Upon information and belief, Defendant, The Skincare Studio ("Borrower"), is and at all times hereinafter mentioned was a domestic limited liability company organized and existing under the laws of the State of Connecticut, with its principal office located at 2103 Main Street, 2nd Floor, Stratford, Connecticut 06615 and with its sole limited liability company member, Terri Grier being a citizen of the State of Connecticut.

6. Upon information and belief, Defendant, Terri Grier (the "Guarantor") (the Guarantor and the Borrower, jointly the "Defendants"), is citizen of the State of Connecticut, and at all times hereinafter mentioned was an individual residing at 155 Barton Drive, Stratford, Connecticut 06614-1902.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship, insofar as NECFS is a citizen of the States of Delaware and New Jersey, and  Defendants are a professional limited liability company and individual residing in and are citizens of the State of Connecticut, and the amount in  controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to NECFS's claims against the Defendants, i.e. the origination of the Finance Agreement and Guaranty Agreements by and between the Defendants and MMP Capital LLC, NECFS's assignor, arose in the judicial district, and the Defendants have agreed to be subject to the court's personal jurisdiction with respect to the subject matter of this action. See section marked as "General" of the Finance Agreement Exhibit A hereto.

## FACTS
## THE FINANCE AGREEMENT

9. On or about August 30, 2023, the Borrower executed the Finance Agreement which evidences the loan extended by MMP Capital LLC ("MMP") to the Borrower. See Exhibit.

10. Under and pursuant to the Finance Agreement, MMP lent to the Borrower and the Borrower borrowed from MMP an amount of money for the Borrower's acquisition and purchase costs for certain business equipment identified in Finance Agreement as a Genius Workstation ("Equipment") from the Borrower's equipment supplier, Lutronic Aesthetics Inc. ("Lutronic"), also identified within the Finance Agreement.

11. On or about August 30, 2023, within the Borrower's equipment acceptance certificate ("Equipment Acceptance Certificate"), the Borrower certified to MMP that the Equipment was delivered to and accepted by the Borrower.

12. As stated within the Finance Agreement, the Borrower consented to the jurisdiction and venue of the federal court sitting in Nassau County, New York State.

13. As stated within the Finance Agreement, if the Borrower fails to pay any amount under the Finance Agreement when due, the Borrower will be in default ("Default") of the Finance Agreement's terms and provisions.

14.     As stated within the Finance Agreement, upon a Default, Plaintiff, as MMP's assignee, may declare all sums due and to become due under the Finance Agreement immediately due and payable.

15.     As stated within the Finance Agreement, the Borrower shall reimburse the Plaintiff for all costs, including Plaintiff's fees, the Plaintiff incur in enforcing Plaintiff's rights and interests under the Finance Agreement.

16.     As stated in the Finance Agreement, the Borrower's obligation to pay all amounts due under the Finance Agreement is non-cancelable, absolute, and unconditional and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason.

## GUARANTY AGREEMENTS

17.     On or about August 30, 2023, the Guarantor signed the guaranty agreements in connection with the Finance Agreement (individually and/or collectively referred to hereafter as "Personal Guaranty Agreement") by which the Guarantor personally unconditionally and irrevocably guaranteed to MMP the prompt payment and performance of all of the Borrower's obligations now or hereafter the Borrower owes to MMP, including those obligations owing under the Finance Agreement. A true and complete copy of the Personal Guaranty Agreement is annexed hereto as part of Exhibit "A" and the terms are incorporated herein by this reference as if fully set forth herein at length.

## MMP'S ASSIGNMENT TO NEC

18.     On or about September 12, 2023 MMP assigned to NECFS all of MMP's rights, claims and interest to and under the Finance Agreement, the Personal Guarantee Agreement and to MMP's security interest in and to the Equipment.

19.     As stated in the Finance Agreement paragraph entitled "General", the Borrower agreed that MMP may assign the Finance Agreement without notice to the Borrower or the

Borrower's consent, and that the Borrower will not assert any claims, defenses or set offs against MMP's assignee that the Borrower may have against MMP or the Borrower's supplier of the Equipment.

20. On or about September 12, 2023, MMP notified the Borrower of MMP's assignment to NEC of all of MMP's interest and claims in, to and under the Finance Agreement and Personal Guaranty Agreement.

## FINANCE AGREEMENT PAYMENT DEFAULT

21. Pursuant to the terms and conditions of the Finance Agreement, the Borrower agreed to pay sixty (60) consecutive monthly installment payments of two thousand one hundred and ninety dollars and thirty-eight cents ($2,190.38) each month to MMP and to the Plaintiff after MMP's assignment of the Finance Agreement to the Plaintiff, as set forth therein.

22. The first monthly installment payment due under the Finance Agreement was due on October 1st, 2023, and each of the consecutive monthly payments thereafter were due on the 1st day of each month.

23. The Borrower failed to pay the monthly payments due under the Finance Agreement.

24. By virtue of Borrower's Default for failing to pay the monthly payments due under the Finance Agreement on February 1st, 2024; March 1st, 2024; April 1st, 2024 and May 1st, 2024, Plaintiff mailed the Borrower a demand letter dated May 2, 2024 (the "Demand Letter") in which the Plaintiff made demand upon the Borrower for the immediate payment of all amounts owing under the Finance Agreement in the amount of $111,428.49.

25. As a result of the Default, the accelerated amounts owing and due under the Finance Agreement as of May 2, 2024 are a total of $111,428.49.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST BORROWER FOR BREACH OF THE FINANCE AGREEMENT

26. Plaintiff repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "25" above as if fully set forth at length herein.

27. The Finance Agreement executed by the Borrower represents a non-cancellable, absolute and unconditional instrument for the payment of money, which is due and payable and to which no genuine defense exists.

28. The Finance Agreement and related documents have never been further altered, modified, or revoked in whole or in part, are incontestable, and remain in full force and effect.

29. The Borrower defaulted under the Finance Agreement by failing to remit to the Plaintiff the payments required to be paid under the Finance Agreement on February 1st, 2024 and after that date, and by failing to pay the amounts due and owing thereon as demanded by the Plaintiff in the Demand Letter.

30. By virtue of the foregoing, the Borrower is liable to Plaintiff on the Finance Agreement, a non-cancellable, absolute and unconditional agreement for the payment of money, for the deficiency default amount of $111,428.49, plus all of Plaintiff's reasonable attorneys' fees, other charges, costs and expenses.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST BORROWER FOR UNJUST ENRICHMENT

31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "30" above as if fully set forth at length herein.

32. The Borrower utilized and enjoyed the proceeds of the Finance Agreement and credit accommodations advanced and made to it by MMP, Plaintiff's assignor, under the Finance Agreement and failed to pay amounts due and owing despite Plaintiff's demand.

33. As a consequence, the Borrower has been unjustly enriched by its retention of the

amounts outstanding under the Finance Agreement.

34. By virtue of the foregoing, the Borrower is liable to Plaintiff on the Finance Agreement, an unconditional agreement for the payment of money, for the deficiency default amount of $111,428.49, plus all of Plaintiff's reasonable attorneys' fees, other charges, costs and expenses.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THE GUARANTOR FOR BREACH OF THE GUARANTY AGREEMENTS

35. Plaintiff repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "34" above as if fully set forth at length herein.

36. The Personal Guaranty Agreement executed and delivered by the Guarantor represents an absolute unconditional instruments and agreements for the payment of money only, which is due and payable and to which no genuine defense exists.

37. The Personal Guaranty unconditionally obligates the Guarantor to Plaintiff for any and all indebtedness of Borrower to Plaintiff, without any qualifications or presentation.

38. The terms of the Personal Guaranty Agreements have never been amended, modified, or altered to any degree and remain in full force and effect, and under and pursuant to the terms of the Personal Guaranty Agreement, the Guarantor is unconditionally bound to make payment to the Plaintiff for all of the amounts owing under the Finance Agreement to the Plaintiff.

39. The Guarantor, as guarantor of all of the indebtedness of Borrower to the Plaintiff, has wrongfully failed or refused to remit any part of the amount due and owing to the Plaintiff.

40. By virtue of the foregoing, the Guarantor is liable to the Plaintiff for breach of her contractual obligations under the unconditional and absolute Personal Guaranty Agreements for the payment of the money the Borrower owes to Plaintiff under the Finance

Agreement, in the amount of $111,428.49, <u>plus</u> all of Plaintiff's reasonable attorneys' fees, other charges, costs and expenses, the payment of which Guarantor personally guaranteed under the Personal Guaranty Agreement.

**WHEREFORE**, the Plaintiff, NEC FINANCIAL SERVICES, LLC as assignee of MMP Capital, Inc., respectfully requests relief as follows:

a. Judgment on its First, Second and Third Causes of Action against Borrower and Guarantor, jointly and severally, in the amount of $111,428.49, plus all of Plaintiff's reasonable attorneys' fees, other charges, costs and expenses.

b. For such other and further relief as the Court may deem just, proper and equitable.

Dated: August 27, 2024

                                            **ROMANO, GARUBO & ARGENTIERI**
                                            **COUNSELORS AT LAW, LLC**
                                            Attorneys for Plaintiff

By:     */s/ Michael F.J. Romano, Esq.*
            Michael F.J. Romano
            Evan J. Salan
            52 Newton Avenue
            P.O. Box 456
            Woodbury, New Jersey 08096